IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KALMBACH FEEDS, INC.,** : | |
| : | **Case No. 2:25-cv-00617** |
| **Plaintiff,** : | |
| : | **Judge Algenon L. Marbley** |
| v. : | |
| : | **Magistrate Judge Chelsey Vascura** |
| **PURINA ANIMAL NUTRITION, LLC,** *et al.*, : | |
| : | |
| **Defendants.** : | |

**OPINION AND ORDER**

This matter comes before this Court on several expedited discovery disputes, as described in the parties' Joint Statement of Discovery Disputes. (ECF No. 31). Specifically, the parties seek a protective order to govern expedited discovery prior to the preliminary injunction hearing. (*Id.* at 4–5, 8–12). The parties also raise issues related to Plaintiff Kalmbach Feeds Inc.'s ("Kalmbach") requests for certain documents and Defendant Purina Animal Nutrition, LLC's ("Purina") responses thereto. (*Id.* at 2–4, 6–8). On July 2, 2025, this Court held a telephonic discovery conference. (*See* ECF No. 30). Based on the parties' written and oral submissions, this Court issued oral rulings that it now memorializes with this written Order.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Kalmbach is an Ohio-based, family-owned corporation that manufactures and sells a line of nutritional feed products for livestock, poultry, and other animals. (ECF No. 1 ¶¶ 1-2). Kalmbach's line of animal feed products includes a brand of poultry feed marketed as Henhouse Reserve® Feed for Chickens and Chickhouse Reserve®. (*Id.* ¶ 2). Defendant Purina is a Minnesota-based business competitor of Kalmbach, with its principal place of business in Minnesota. (*Id.* ¶¶ 4, 7). Within the State of Ohio, Purina distributes, markets, and sells its own

brands of poultry feed products, including the product "Purina Farm to Flock 18% Layer Hen food," which directly competes with Kalmbach's Henhouse Reserve® Feed for Chickens and other related products. (*Id.* ¶ 8).

According to Plaintiff, Purina "has attempted to capitalize on the public's fear of bird flu by falsely representing that its chicken feed can 'defend' against the virus." (*Id.* ¶ 21). This fear, Plaintiff explains, is particularly potent in Ohio, where the total number of birds affected by bird flu in the state is nearly 15 million. (*Id.* ¶ 15). Plaintiff contends that the bird flu is "carried and disseminated by migratory waterfowl and more recently by non-migratory domestic birds and other mammals." (*Id.* ¶ 18). Citing statements by the U.S. Department of Agriculture ("USDA") and Ohio Department of Agriculture ("ODA"), Plaintiff notes that the best way to prevent bird flu is "by consistently using appropriate biosecurity measures," for example, "handwashing after contact with poultry, using closed sources of uncontaminated water on poultry farms, and regularly disinfecting poultry enclosures and equipment." (*Id.* ¶ 19). What federal and state agricultural agencies "***do not recommend*** as a preventative measure," according to Plaintiff, is "any kind of animal feed diet or food additive for poultry, other birds, or any other animal capable of contracting bird flu." (*Id.* ¶ 20 (emphasis in original)). Plaintiff alleges that in the poultry industry in particular, "there is no accepted scientific literature establishing any definitive link between particular food additives in a chicken's diet and its risk of contracting [bird flu]." (*Id.*). Thus, absent an approved a vaccination, only biosecurity practices—not "a farmer's choice of chicken feed (or feed additives)"— prevent viral bird flu infections. (*Id.*).

Contrary to this established guidance, Plaintiff alleges that Defendant Purina, in promotional images and online materials, misrepresents that its product, "Purina Farm to Flock 18% Layer Hen food" "Defends Against Viruses, Like Bird Flu," due to its "built-in defense

2

against avian influenza and other viruses, giving you peace of mind from the inside out." (*Id.* ¶ 21). Purina's written description of the product similarly promises that its Hen Food will "help[] defend against viruses like bird flu." (*Id.* ¶ 22). Although Defendants "have not received approval from the Food and Drug Administration to market and sell Hen Food as a drug, or new animal drug as the FDCA [Food, Drug and Cosmetic Act] requires," Plaintiff alleges that Purina's characterization of Hen Food as defending against the bird flu and other viruses, in conjunction with Defendants' "reference to the hundreds of veterinarians, immunologists and others with specialized scientific education that they employ," displays "an unmistakable intent for customers to perceive their Hen Food as a 'drug' that is "capable of 'mitigati[ng]' and 'preventi[ng]' of disease in man or other animals." (*Id.* ¶ 33 (quoting 21 U.S.C.A. § 321(g)(1)). Plaintiff alleges that it has suffered direct injury as a result of these alleged misrepresentations, noting that it has "received multiple inquiries from customers familiar with Purina's advertisements asking why Kalmbach cannot produce chicken feed with the same anti-viral, 'Defends Against' bird flu benefits." (*Id.* ¶ 37).

Plaintiff asserts false advertising claims under federal and Ohio law. (ECF No. 1). Specifically, Count I of its Complaint asserts a federal false advertising claim under 15 U.S.C. § 1125(a), alleging that Purina's "online representations are "commercial advertisements and promotions," (*id.* ¶ 41), that contain "false and/or misleading statements of fact" that "deceive or tend to deceive a substantial portion of the intended audience and [that] have created customer confusion." (*Id.* ¶ 42). These statements, according to Plaintiff are "material and will influence the deceived consumer's purchase decisions," (*id.* ¶ 43), and "have proximately caused Kalmbach to suffer monetary damage, and are continuing, and are likely to continue to cause, monetary damage to Kalmbach." (*Id.* ¶ 44). Count II asserts a claim under the Ohio Deception Trade

3

Practices Act, alleging that "Defendants' False Advertisements misrepresent that the feed contains characteristics and benefits that they do not possess[.]" (*Id.* ¶ 47). The Complaint seeks compensatory damages in excess of $75,000; punitive damages; treble damages under 15 U.S.C. § 1117(a); costs and attorneys' fees; and "[t]emporary, preliminary and permanent injunctive relief prohibiting the Purina Defendants from repeating the false advertising and deceptive practices complained of herein[.]" (*Id.* at 16).

### B. Procedural History

On June 3, 2025, Kalmbach filed its Complaint. (ECF No. 1). On June 4, 2025, Plaintiff filed its Motion for Preliminary Injunction. (ECF No. 8). On June 11, 2025, this Court held a telephonic status conference, during which it set a briefing and expedited discovery schedule to resolve Plaintiff's motion. (ECF No. 15). On June 25, 2025, Purina opposed the Motion for a Preliminary Injunction. (ECF No. 28). Purina also moved to dismiss the Complaint. (ECF No. 29).

As part of expedited discovery, Plaintiff propounded 29 document requests and six (6) interrogatories to Defendant on June 13, 2025. (*See* ECF No. 31-1). Per this Court's scheduling order (ECF No. 23), Defendant served its objections to the same on June 23, 2025. (ECF No. 31-2). After several discovery disputes arose, this Court scheduled a telephonic status conference and directed the parties to file a joint discovery dispute statement, describing the disputed issues and detailing the parties' respective positions. (ECF No. 30).

This Court subsequently held the telephonic status conference on July 2, 2025, during which it ruled on the parties' discovery disputes and addressed housekeeping matters related to the preliminary injunction hearing scheduled for July 16, 2025. This Court's oral rulings are memorialized below.

## II. LAW & ANALYSIS

Plaintiff takes issue with Defendant's objections and responses with respect to 13 document requests, specifically Requests for Production Nos. 2, 7–9, 11, 18–22, 24–26. (*See* ECF No. 31 at 2–4). Additionally, the parties dispute whether, and to what extent, the protective order should include language setting forth a process for disclosure of certain identifying information about a receiving party's retained expert, and a time period for the producing party to object to that expert before that expert can gain access to the materials at issue. (ECF No. 31 at 4 – 5, 8 –11). At the status conference, this Court ruled on the parties' discovery disputes, including the appropriate terms of a protective order and Plaintiff's Requests for Production, as follows.

### A. Protective Order

A district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016), *cert. denied sub nom. Fears v. Kasich*, 138 S. Ct. 191, 199 L. Ed. 2d 128 (2017) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011)). Ultimately, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The burden of

establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x. 498, 500 (6th Cir. 2001) (citation omitted).

The parties agree that a protective order should be issued to govern expedited discovery in this case. They disagree, however, as to whether and to what extent the protective order should require disclosure of certain identifying information about an expert, and a time period for the producing party to object to that expert before that expert can gain access to the materials at issue. Specifically, Defendant seeks to include the following disclosure requirement relating to expert witnesses:

> 9. Before any "Confidential" or "Attorneys' Eyes Only" material is disclosed to any outside expert or consultant pursuant to Paragraph 6(d), the party seeking to make such disclosure shall provide written notice to the producing party (the "Designating Party") of the identity of the proposed expert or consultant. This notice shall include:
> 
> - The expert's or consultant's name, business address, and current curriculum vitae;
> 
> - A list of all cases in which the expert or consultant has testified (at trial or deposition) within the last five years;
> 
> - A list of all companies or entities for which the expert or consultant has worked or consulted in the past five years, including a brief description of the subject matter of such work or consultation and compensation for that work or consultation; and
> 
> - A list of all companies or entities that have sponsored the expert, including an identification of the sponsor, years of sponsorship and payments related to the same.

(ECF No. 31 at 9). Defendant argues that this provision is necessary to address its concern that Plaintiff's expert, Dr. Simon Shane, "armed with its proprietary information, could disclose that information to a competitor or otherwise incorporate such knowledge into commercial ventures that compete with Defendant." (*Id.*). Plaintiff lodges several objections and denies Defendant's

concerns as "speculative" and "unfounded," noting that this Court's standard protective order is sufficient to guard against the improper use of discovery outside of litigation. (*See* ECF No. 31 at 5).

The Federal Rules of Civil Procedure permit a court to order that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed. R. Civ. P. 26(c)(7). "There is however, no absolute bar to the discovery of trade secrets." *Cheryl & Co. v. Krueger*, No. 2:18-CV-1485, 2019 WL 3334329, at *2 (S.D. Ohio July 25, 2019) (citation omitted). Rather, "courts must exercise discretion to avoid unnecessary disclosure of such information." *Id.* (citation and quotation marks omitted); *see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010) (noting that "[i]t is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure") (citation and quotation marks omitted). Accordingly, a court may "consider imposing special conditions when a trade secret is disclosed during discovery." *Id.*

At the status conference, this Court directed the parties to the Protective Order issued in *Cheryl & Co. v. Krueger*, No. 2:18-CV-1485, ECF Nos. 37 & 37-1, whereby Magistrate Judge Kimberly Jolson fashioned a protective order accommodating similar concerns of the potential misuse of trade secrets as part of the discovery process. *See Cheryl & Co. v. Krueger*, No. 2:18-CV-1485, 2019 WL 3334329, at *2 (S.D. Ohio July 25, 2019) (resolving dispute that "boils down to the parties' contrasting views regarding the consequences of disclosing trade secrets to a competitor as part of the discovery process"). As Magistrate Judge Jolson opined in that case, this Court is "not aware of a mechanism by which it could ensure the confidentiality of a third-party recipe expert that is more powerful than counsels' risk of contempt, liability for damages, or

7

disbarment, should an AEO designation be ignored resulting in a disclosure of secret recipes." *See Cheryl & Co. v. Krueger*, No. 2:18-CV-1485, 2019 WL 7821038, at *4 (S.D. Ohio Mar. 11, 2019).

This Court indicated that it is inclined to adopt the same expert-related disclosure terms in the Protective Order issued in *Cheryl & Co.* (*See Cheryl & Co. v. Krueger,* Case No. 2:18-CV-1485, ECF No. 37-1 ¶ 5). The parties agreed that an interim protective order, without the contested expert disclosure requirement proposed by Defendant, should issue given that: (1) Dr. Simon Shane (Plaintiff's expert with whom Defendant expresses concerns) will be deposed soon; and (2) according to Defendant, there are no materials currently being withheld from Dr. Shane on the basis of a Confidential or AEO designation. Should Dr. Shane's deposition testimony show that a more detailed protective order is necessary, the parties can revisit the issue and seek to amend the interim protective order as appropriate.

As a result of argument presented to this Court, this Court amends Paragraphs 6–10 in the parties' proposed order (ECF No. 31-3) to incorporate Paragraph 5 in the *Cheryl & Co.* Protective Order. (*See* Case No. 2:18-CV-1485, ECF No. 37-1 ¶ 5). The Discovery Confidentiality Order, attached as Exhibit 1 to this Opinion and Order, shall be the controlling protective order governing expedited discovery in this case.

### B. Document Requests

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir.1998). The Sixth Circuit has explained the general test under Rule 26 is "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Id*. Because the parties must make discovery requests that will produce relevant information, this

8

Court first notes the elements of a Lanham Act false advertising claim: (1) the defendant made a false or misleading statement of fact about the plaintiff's product or service; (2) the statement actually deceived or tended to deceive a substantial portion of the message's intended audience; (3) the statement likely influenced the intended audience's purchasing decisions; (4) the defendant introduced the statement in interstate commerce; and (5) there is a causal connection between the defendant's statement and the plaintiff's injury. *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452–53 (6th Cir. 2024).  "[A]n analysis appropriate for a determination of liability under section 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act." *Scotts Co. LLC v. SBM Life Sci. Corp.*, 749 F. Supp. 3d 865, 881 (S.D. Ohio 2024) (quoting *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 784–85 (S.D. Ohio 2009)).

When a plaintiff makes a claim for ***damages*** under the Lanham Act based on deceptive or ambiguous advertising, the claim "can only be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertising in a way that misled them about the plaintiff's product)." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (quoting *American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)). A plaintiff must present evidence that a "significant portion" of the consumer population was deceived. *Id*. (quoting *Certified Podiatric Physicians*, 185 F.3d at 616 (citation and internal quotations omitted)). "Although surveys are not required, successful plaintiffs usually use surveys to present evidence of the public's reaction." *Id*. (citation modified).  By contrast, a plaintiff seeking injunctive relief for false advertising "faces a lower standard of showing only that the defendant's representations about its product have a tendency to deceive consumers." *Id*.  (citation modified).

9

If the requested material is relevant, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir.2007).

### 1. Requests for Production No. 2

Plaintiff's Request No. 2 asks for "all drafts of each exemplar produced in response to Document Request No. 1. containing the Challenged Statements."[1] Defendant declines to produce documents responsive to this request, arguing primarily that "drafts" of advertisements are irrelevant. Specifically, Defendant maintains that "[t]he issue for the Court in this preliminary injunction is whether the advertisements, *as published*, are false." (ECF No. 31 at 7). As such, Defendant argues that drafts "have no bearing on that issue because they were not published," and the burden of producing them in the context of expedited discovery "far outweighs any possible relevance they will have on the Motion." (*Id.* at 8 (citing *Wurth Elecs. ICS, Inc. v. Elemary*, No. 3:23-cv-82, 2023 WL 3159738, *2 (S.D. Ohio Apr. 18, 2023) (finding majority of discovery requests we "unduly burdensome" and not "narrowly tailored to the issues relevant to the preliminary injunction determination")).

At the status conference, this Court opined that draft advertisements could be potentially relevant to show deliberate intent or bad faith on behalf of Defendant in making the allegedly false or misleading statements. *See Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 693–94

---

[1] Neither party defines the term "Challenged Statements" as used in the requests for discovery. In its motion for preliminary injunction, however, Kalmbach has identified several statements related to "Purina® Farm to Flock™ 18% Layer Food" that it alleges are false or misleading: (1) "Defends Against Viruses, Like Bird Flu"; (2) "Comes with built-in defense against avian influenza and other viruses, giving you peace of mind from the inside out"; (3) "It also gives you peace of mind by helping defend against viruses like bird flu"; (4) "Complete whole-food goodness with bird flu defense"; and (5) remarks that its chicken feed product is "DRIVEN BY SCIENCE," and supported by professionals, scientists, and even "immunologists" to deliver "the best nutrients" to yield "the best results." (ECF No. 8 at 4– 7).

(6th Cir. 2000); *Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*, 689 F. Supp. 2d 929, 943 (S.D. Ohio 2010). This Court concluded, however—and Plaintiff agreed—that such a showing is not required to establish a violation under the Lanham Act. *See Vector Products, Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319, (11th Cir. 2005) ("It is well-settled that no proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising.").

Because Plaintiff has not established the relevance of "all" "draft" advertisements, Defendant need not produce documents responsive to Request No. 2.

### 2. **Requests for Production Nos. 7, 8, 18, 19, 20, 22, 24–26**

Plaintiff takes issue with Defendant's responses to Requests for Production Nos. 7, 8, 18, 19, 20, 22, 24–26,[2] in which Defendant indicated that it would "only produce exemplar or representative documents." (ECF No. 31 at 3). In the Joint Statement, Defendant explains that "the addition of the word 'representative' was to reflect the realities of Defendant's search and collection of documents under the expedited circumstances." (ECF No. 31 at 7). Defendant further notes that it is "presently not aware of any documents responsive to these requests that are being deliberately withheld, other than perhaps on the basis of attorney-client privilege (which is unrelated to the addition of the word 'representative')." (*Id.*).

At the status conference, Defendant confirmed that it had produced all non-privileged documents within its custody or control that were responsive to these requests—a representation

---

[2] Broadly speaking, Plaintiff's Request No. 7 seeks documents and communications supporting or substantiating each of the Challenged Statements; Request No. 8 seeks testing data, substantiation studies, and/or test reports relating to Challenged Statements; Request Nos. 18, 19, and 20 seek consumer data, consumer perception data, and/or consumer surveys reviewed pertaining to the Challenged Statements, Purina Farm to Flock 18% Layer hen food, and the Flock Strong System; Request Nos. 22 and 24 seek documents and communications with any person or external party relating to the Challenged Statements; Request No. 25 seeks documents related to the removal, takedown, or discontinuation of any one or more of the Challenged Statements; and Request No. 26 seeks documents relating to the consumer impact of the Challenged Statements.

11

that Plaintiff accepted. Defendant emphasized that its qualified responses to Plaintiff's Requests were to accommodate the expedited discovery process, and did not rule out the possibility that a more "robust" search, with time, would yield more responsive documents. As this Court reminded the parties at the status conference, each producing party has a duty to engage in discovery in good faith and to supplement discovery responses should responsive documents become known to them. Fed. R. Civ. P. 26(e); *see O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 468 (S.D. Ohio 2015) (ordering party to "either supplement her production in response to these document requests, or supplement her discovery responses to indicate that no other responsive documents exist").

### 3. Requests for Production No. 9

Plaintiff's Request No. 9 seeks the production of "documents sufficient to the composition of FeedLock, including specification and concentration of claimed botanical extracts, probiotics, prebiotics and antioxidants." Defendant argues that its response to Request No. 9 is already covered by Request No. 12, which seeks information regarding the suppliers of certain ingredients.[3] Defendant notes it has already produced a list of the ingredients, and that "[t]he precise ratios of all ingredients are not informative of a likelihood of success," and that "there is no rational connection to the suppliers of ingredients and the truth or falsity of the challenged statements."

This Court disagrees. Plaintiff's false advertising claims involve, among other things, challenges to "online remarks where Purina ties its misrepresentations about bird flu defense to the professionals, scientists, and even 'immunologists' it employs to deliver 'the best nutrients' to yield "the best results," and its claims that its representations are "DRIVEN BY SCIENCE." (ECF

---

[3] Specifically, Request No. 12 states: "Please produce DOCUMENTS sufficient to confirm the sources, including location of suppliers, and the nation of origin, of botanical extracts, including, but not limited, to the stated inclusion of 'Yucca,' 'Fenugreek,' and 'Soapbark' included in FeedLock."

12

No. 8 at 6 –7). Specifically, Plaintiff argues that "there is no science behind" these representations, and that "Purina intentionally clothes its falsehoods in an air of scientific authority – even though there is no evidence that its Hen Food could possibly 'defend against'" the bird flu. (Id.). In support of this claim, Plaintiff's expert has opined that "a Purina® advertisement refers to a feed ingredient identified as FeedLock®, which Purina describes as a 'breakthrough ingredient of the [Flock Strong™] system that nourishes and protects, helping to instantly defend against avian influenza while also boosting immunity and breaking down harmful pathogens on the feed with every bite.'" (ECF No. 8-2 ¶ 2).

Thus, the composition of FeedLock and ratios of ingredients is relevant to any allegedly false or misleading statements by Purina that its ingredients defend against bird flu. This Court will therefore order Defendant to produce, pursuant to the Discovery Confidentiality Order, all non-privileged, responsive documents "sufficient to IDENTIFY the composition of FeedLock, including specification and concentration of claimed botanical extracts, probiotics, prebiotics and antioxidants."

### 4. Requests for Production No. 11

Plaintiff's Request No. 11 seeks "all DOCUMENTS IDENTIFYING approval of FeedLock in the European Union or any of the constituent nations, and/or in the United States as an additive to prevent or mitigate avian influenza irrespective of pathogenicity." Defendant argues that that approvals of Feedlock in the EU and/or U.S. as an additive to prevent or mitigate avian flu are "divorced from whether or not Defendant has sufficient evidence to substantiate its advertising claims," and at the status conference, further stated that Defendant is not aware of any documents responsive to this request that is within its custody or control.

At the status conference, this Court asked Plaintiff whether any of the Challenged Statements assert or imply that Purina's chicken feed product received regulatory approval as a drug by U.S. or E.U. authorities. Plaintiff argued that Purina's "science-related" representations[4] implies a falsehood that its chicken feed had received regulatory approval.

Generally, courts analyzing false advertising claims based on representations of governmental approval have required such representations to be explicit. In *Mylan Laboratories, Inc. v. Matkari*, for example, the Fourth Circuit held that a theory that "the very act of placing a drug on the market, with standard package inserts often used for FDA-approved drugs, somehow implies (falsely) that the drug had been 'properly approved by the FDA'" is "quite simply, too great a stretch under the Lanham Act." 7 F.3d 1130, 1139 (4th Cir. 1993).

Several district courts have expanded upon the Fourth Circuit's reasoning to hold more broadly that "[f]alse advertising claims based on allegations of implied governmental approval have not been allowed, for 'the law does not impute representations of government approval . . . in the absence of explicit claims.'" *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 417 (S.D.N.Y. 2006) (citation omitted); *see also Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *8-9 (N.D. Cal. Aug. 16, 2021).

In some circumstances, however, courts have recognized a false advertising claim based on a theory of implied government approval. *See, e.g., JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1000 (C.D. Cal. 2014) (finding that plaintiff plausibly stated an approval-

---

[4] *See e.g.*, ECF No. 8 at 6–7 (addressing "online remarks where Purina ties its misrepresentations about bird flu defense to the professionals, scientists, and even 'immunologists' it employs to deliver 'the best nutrients' to yield 'the best results,'" and Purina's claims that its representations are "DRIVEN BY SCIENCE").

based false advertising claim based on an implied falsehood where the complaint alleged that defendants had put their products on industry "Price Lists," and that "buyers believe[d] that all prescribed drugs identified on the Price Lists are ... FDA-approved"); *Pacira BioSciences, Inc. v. Ventis Pharma, Inc.*, No. 2:24-CV-07554-MRA-RAO, 2025 WL 576549, at *9 (C.D. Cal. Jan. 17, 2025) (finding plaintiff plausibly alleged that defendant's description of its product as an "off-label" use of compounded drug product "implies a falsehood that [the compounded drug product] is FDA approved and that this statement is likely to cause consumers actual confusion").

This Court need not reconcile these two approaches at this time, as the items sought in Request No. 11 are relevant under either approach. In other words, Plaintiff's line of inquiry in seeking evidence related to regulatory approval of Defendant's chicken feed product is reasonably calculated to lead to the discovery of relevant, admissible evidence pertaining to the "scientific" falsehoods alleged in the Complaint. *See Lewis,* 135 F.3d at 402. This Court therefore orders Defendant to produce, pursuant to the Confidentiality Discovery Order, all non-privileged, responsive documents "identifying approval of FeedLock in the European Union or any of the constituent nations, and/or in the United States as an additive to prevent or mitigate avian influenza irrespective of pathogenicity."

### 5. Request for Production No. 21

Finally, Plaintiff's Request No. 21 seeks production of "all social media posts received regarding the Challenged Statements and your responses to the posts, including those social media sites accessed or populated by You even if owned or maintained by another person." Defendant notes that it is "presently not aware of any documents responsive to these requests that are being deliberately withheld, other than perhaps on the basis of attorney-client privilege (which is unrelated to the addition of the word 'representative')."

15

Given Defendant's written and oral submissions that "[t]his Request seeks publicly available information, which Plaintiff has already incorporated into its Complaint"; that "[n]o other documents exist"; and that it is "presently not aware of any documents responsive to these requests that are being deliberately withheld," this Court is satisfied that Defendant has responded to and complied with Request for Production No. 21. (*See Walsh v. Doner Int'l Ltd., Inc.*, 336 F.R.D. 139, 141 (E.D. Mich. 2020) ("the Court cannot compel production of documents that do not exist"). Defendant, however, is duty-bound to supplement discovery responses should responsive documents become known to it. Fed. R. Civ. P. 26(e).

### C. Scheduling and Administrative Matters

In addition to resolving discovery disputes, this Court also addressed scheduling and administrative matters related to the preliminary injunction hearing scheduled for July 16, 2025. Specifically, this Court granted Plaintiff's request for an extension of time to file its reply; and granted Defendant's request to extend the deadline for the parties to identify the witnesses they expect to call at the preliminary injunction hearing. Plaintiff's reply in support of its preliminary injunction motion, previously due on July 2, 2025 (*see* ECF No. 15), is **now due on July 4, 2025.** The parties' deadline to disclose witnesses they expect to call at the preliminary injunction hearing, previously set for July 3, 2025 (*see* ECF No. 23 ¶ 2), is hereby extended to **July 7, 2025**. Additionally, this Court directs the parties to meet and confer and file, **no later than July 9, 2025**, their proposed plan for the preliminary injunction hearing, including the sequence of proceedings; any allocation of time for evidentiary presentations and for oral argument(s); a proposed briefing schedule for post-hearing briefs (if necessary); and any other information the parties deem appropriate to include. Based on the parties' submissions, this Court will schedule a pre-hearing conference if necessary.

### III. CONCLUSION

For the reasons set forth above, Defendant **shall produce** documents responsive to Plaintiff's Requests for Production Nos. 9 & 11, as set forth in this Opinion & Order. The parties are reminded of their duty to engage in discovery in good faith and to supplement discovery responses should responsive documents become known to them. The Discovery Confidentiality Order, attached as Exhibit 1 to this Opinion and Order, **shall be** the controlling protective order governing expedited discovery in this case. Plaintiff's reply in support of its preliminary injunction motion is **due on July 4, 2025.** The parties shall disclose the witnesses they expect to call at the preliminary injunction hearing no later than **July 7, 2025**.

The parties are **ordered** to meet and confer and file, **no later than July 9, 2025**, their proposed plan for the preliminary injunction hearing, including the sequence of proceedings; any allocation of time for evidentiary presentations and for oral argument(s); a proposed briefing schedule for post-hearing briefs (if necessary); and any other information the parties deem appropriate to include. Based on the parties' submissions, this Court will schedule a pre-hearing conference if necessary.

**IT IS SO ORDERED.**

**DATED:  July 3, 2025**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**