IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KALMBACH FEEDS, INC.,                          :
                                               :        Case No. 2:25-cv-00617
            Plaintiff,                         :
                                               :        Judge Algenon L. Marbley
v.                                             :
                                               :        Magistrate Judge Vascura
PURINA ANIMAL NUTRITION,                       :
     LLC, *et al.*,                            :
                                               :
            Defendants.                        :

## OPINION AND ORDER

This matter comes before the Court on Defendant Purina Animal Nutrition, LLC's Motion to Dismiss Plaintiff Kalmbach Feeds, Inc.'s Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 29). Plaintiff Kalmbach sued Defendant Purina for false advertising under state and federal law in connection with its Farm to Flock chicken feed, which Purina represented as helping to defend against viruses such as avian influenza. Purina points out that Kalmbach has not sufficiently alleged an injury resulting from that advertising. For the following reasons, this Court **GRANTS** Purina's Motion, and provides leave for Kalmbach to amend its Complaint.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff Kalmbach Feeds is an Ohio corporation that manufactures feed products for livestock, poultry, and other animals. Its animal feed products include a brand of poultry feed marketed as Henhouse Reserve and Chickhouse Reserve. (ECF No. 1 ¶¶ 1–3). Purina Animal Nutrition is a Delaware limited liability company also in the business of producing and distributing

animal feed products. Purina's animal feed products include brands of poultry feed, such as Purina Farm to Flock 18% Layer Hen food." (*Id.* ¶¶ 4–6, 8). Purina and Kalmbach are business competitors, and Purina's Farm to Flock feed "directly competes with Kalmbach's Henhouse Reserve" chicken feed. (*Id.* ¶¶ 7–8).

Kalmbach accuses Purina and five unidentified John Doe defendants[1] of attempting to capitalize on public fear about avian influenza by falsely representing that Purina's Farm to Flock feed "Defends Against Viruses, Like Bird Flu" due to a "built-in defense against avian influenza and other viruses." (*Id.* ¶¶ 9, 21). Kalmbach points to a series of Purina advertisements that they say were marketed and provided to customers, distributors, and merchants. (*Id.* ¶ 36; *see, e.g.*, ¶¶ 31, 33). Purina's advertisements, made via electronic mail, social media posts, paper flyers, Purina's online store, and elsewhere on the internet, contain the following claims:

- That Farm to Flock would defend against viruses like the bird flu due to its aforementioned "built-in defense against avian influenza and other viruses," which would give the customer "peace of mind from the inside out." (*Id.* ¶ 21; *see id.* ¶¶ 22–26, 31–32).

- That Purina's representations were "driven by science" and made by a company that employed "more than 500 Masters of Science, Ph.D.s, veterinarians, nutritionists, microbiologists, geneticists, and *immunologists*." (*Id.* ¶¶ 27–28) (emphasis added).

---

[1] Kalmbach has thus far failed to identify the five John Doe Defendants, and the docket does not reflect that service has been effected upon any John Doe Defendant. *See* Fed. R. Civ. P. 4(m); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007).

- That Farm to Flock's "breakthrough ingredient" FeedLock would "help[] defend against avian influenza and other viruses by breaking down these harmful pathogens on the feed" and would "boost[] immunity." (*Id.* ¶ 30).

- That Farm to Flock offered "Complete Whole-food Goodness & Defense," or "flu-fighting goodness," that would "actively support[] and fortif[y] [a] flock's immune and gut health." (*Id.*; *see id.* ¶ 31).

Kalmbach asserts that Purina created these advertisements as a marketing tactic, knowing that owners of backyard chicken flocks "may be at particular risk" of avian influenza due to the virality of recent outbreaks and the severity of the virus in infected birds, while the government and poultry industry would be concerned about the financial toll of potential outbreaks. (*Id.* ¶¶ 14–18; *see id.* ¶¶ 21, 33). Thus, Purina could gain a market edge over its competitors by convincing them that Farm to Flock offered a benefit—a protection or mitigation against the risk of avian influenza. (*Id.* ¶¶ 37–38).

But if it sounds too good to be true, it probably is—and according to Kalmbach, Purina's marketing and promotion of Farm to Flock could not be true. That's because the best way to prevent avian influenza, including its highly pathogenic form, is through "biosecurity measures" such as handwashing, decontaminating enclosures and equipment, and maintaining closed water sources. (*Id.* ¶ 19). By contrast, there is not "any kind of animal feed diet or food additive for poultry" recognized as protecting against avian influenza, "because feed is not regarded as a route of infection for [avian influenza] among poultry." (*Id.* ¶ 20). Simply put, Kalmbach accuses its competitor Purina of pants-on-fire lying, through attempted viral virus-related marketing, to gain a competitive edge in the market. Kalmbach asserts that Purina's marketing is untrue because "no accepted scientific literature establish[es] any definitive link between particular food additives in

3

a chicken's diet and its risk of contracting [highly pathogenic avian influenza]." (*Id.* ¶¶ 20–21, 31, 33, 36).

Kalmbach claims that customers have been misled by Purina's false representations, and in their confusion, they have reached out to inquire as to why Kalmbach has not also produced a feed that defends against avian influenza. (*Id.* ¶ 37). Because Purina's false representations are "material to consumers' purchase decisions," and because Purina and Kalmbach are competitors, Kalmbach claims that it is irreparably harmed by Purina's representations about Farm to Flock and FeedLock. (*Id.* ¶¶ 38–39, 7–8).

### B. Procedural Background

Kalmbach sued on June 3, 2025, and moved for a preliminary injunction the next day. Without admitting liability, Defendant Purina consented to the preliminary injunction motion on June 18. Kalmbach then sought to amend its preliminary injunction motion, and Purina subsequently opposed it. The Court heard argument and received testimony regarding Kalmbach's requested preliminary injunction on August 26–28 and September 8, 2025, (*see* ECF Nos. 57–60), and issued a preliminary injunction on November 12, 2025. *Kalmbach Feeds, Inc. v. Purina Animal Nutrition, LLC*, 2025 WL 3153412, at \*15 (S.D. Ohio Nov. 12, 2025) (Marbley, J.).

Kalmbach's Complaint asserts two separate counts for violations of the Lanham Act and the Ohio Deceptive Trade Practices Act under its single theory of the case: that Purina engaged in false advertising when it claimed that its Farm to Flock chicken feed offered some benefit against avian influenza or other viruses. (ECF No. 1 ¶¶ 40–47). It requests compensatory, punitive, and treble damages, injunctive relief, as well as costs and fees. (*Id.* at 16). While the preliminary injunction was being briefed, Purina also sought to dismiss the Complaint in its entirety under Fed. R. Civ. P. 12(b)(6), arguing that the Complaint "contains no allegation that Kalmbach suffered any

4

actual lost sales or damage to its reputation because of the complained-of advertising claims." (ECF No. 29 at 3).  Kalmbach opposed, and Purina replied.  (ECF Nos. 40, 43).  The matter is now ripe for review.

## II.    STANDARD OF REVIEW

Pleadings that state a claim for relief, such as a complaint, must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A party may challenge the sufficiency of a complaint by a motion arguing that the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Courts evaluating a Rule 12(b)(6) motion to dismiss "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [its] favor."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted).  This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, their factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557(2007)).  In sum, the facts must be sufficient to "raise a right to relief above the speculative level," such that the complaint's claims are "plausible on [their] face."  *Twombly*, 550 U.S. at 555, 570.

## III.    LAW & ANALYSIS

Complaints are governed by a "liberal" pleading standard, *Roof Maxx Techs., LLC v. Holsinger*, 2021 WL 3617153, at * 3 (S.D. Ohio Aug. 16, 2021) (Marbley, J.), and they "will survive a motion to dismiss" where they satisfy it.  *Crawford v. Columbus State Community College*, 196 F. Supp. 3d 766, 772 (S.D. Ohio 2016) (Marbley, J.).  Yet complaints cannot simply

make "the bare assertion of legal conclusions to survive a motion to dismiss." *Roof Maxx Techs.*, 2021 WL 3617153, at *3. And although this Court already determined that Kalmbach was entitled to a preliminary injunction and had established the requisite presumption of irreparable harm, *Kalmbach*, 2025 WL 3153412, at *11–12, courts considering motions to dismiss "must focus only on the allegations in the pleadings." *Waskul v. Washtenaw Cnty. Comm. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (internal quotation marks and citation omitted). Purina's Motion to Dismiss tests whether Kalmbach's claims in its Complaint are viable "without reference to evidence not included in [the] complaint." *Id.*

### A. Elements of False Advertising Claims

Kalmbach asserts two counts for false advertising: one for a violation of the federal Lanham Act, and one for a violation of Ohio's false advertising law. The standards for these two laws are similar.

The Lanham Act prohibits what is commonly referred to as false advertising. It establishes liability for the use of "any word, term, . . . false or misleading description of fact, or false or misleading misrepresentation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities[] . . . of [its] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To bring a false advertising claim under the Lanham Act, a party must prove: (1) the adverse party "made a false or misleading statement of fact about [a] product or service"; (2) that statement "actually deceived or tended to deceive a substantial portion of the . . . intended audience"; (3) that statement "likely influenced the intended audience's purchasing decisions"; (4) the adverse party "introduced the statement in interstate commerce"; and (5) "a causal connection" exists between the statement and the injury. *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452–53 (6th Cir. 2024)

6

Ohio's Deceptive Trade Practices Act also prohibits false advertising, because it prohibits parties from "[r]epresent[ing] that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have."  Ohio Rev. Code § 4165.02(A)(7).  The parties agree that the Ohio Deceptive Trade Practices Act Claim is analogous to the Lanham Act.  (ECF Nos. 40 at 6; 29 at 9–10).[2]

## B.  Parties' Arguments

The central question is whether Kalmbach has alleged an injury causally connected to the challenged false advertising.  Purina challenges Kalmbach's pleading of the injury causation element of the false advertising claims, arguing that Kalmbach has only alleged "direct competition and consumer deception."  (ECF No. 43 at 1; *see* ECF Nos. 40 at 6; 29 at 5).  According to Purina, Kalmbach must allege either actual lost sales or damage to its reputation stemming from the challenged advertising claims, but it has failed to do so because it has only alleged customer inquiry regarding Purina's claims.  (ECF No. 29 at 3–4).  Purina points to the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.* as establishing the requirement that either lost sales or reputation damage be pleaded for a suit to fall under the "zone of interest" of the Lanham Act, arguing that Kalmbach has established neither type of injury.  (*Id.* at 5–8 (citing *Lexmark*, 572 U.S. 118, 131–32 (2014)).  Purina concludes that Kalmbach has failed to "bridge [the] causal gap" in its unexamined and unsupported conclusory assumptions that any sale to Purina is necessarily a sale lost from Kalmbach.  (ECF No. 43 at 7–8).

---

[2] Indeed, courts typically use the same analysis when evaluating false advertising claims under both the Lanham Act and the Ohio Deceptive Trade Practices Act.  Ohio's law is similar, though it omits the interstate commerce component of the federal law.  *See Kalmbach Feeds, Inc. v. Purina Animal Nutrition, LLC*, 2025 WL 3153412, at *4 (S.D. Ohio Nov. 12, 2025) (Marbley, J.) (collecting cases).

Kalmbach argues that its Complaint is sufficient for *Lexmark*'s zone of interest test because it has alleged that it is a direct competitor to Purina, and that it has alleged causation through customer inquiries.  (ECF No. 40 at 1–2, 7–11).  It argues that it should not be "required to *prove* lost sales in order to pursue [its] lawsuit," and focuses on its request for injunctive relief, rather than monetary relief.  (*Id.* at 11) (emphasis added).  But as Purina points out, Kalmbach relies on pre-*Lexmark* caselaw and conflates "proving lost sales" with "adequately pleading a cognizable injury" for the purposes of a Motion to Dismiss.  (ECF No. 40 at 1, 3).

## C.  Analysis

For Kalmbach's interests "to come within the zone of interests [protected by law] in a suit for false advertising under § 1125(a), [Kalmbach] must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131–32.  Kalmbach has not sufficiently pleaded any such injury, and its Complaint is conclusory and vague in alleging harm:  Kalmbach only asserts that Purina's challenged advertisements "irreparably harm[ed] Kalmbach."  (ECF No. 1 ¶ 39).  Moreover, in its response to Purina's Motion to Dismiss, Kalmbach conceded that its "Complaint contains no current allegation of reputational harm caused by Purina's false advertisements."  (ECF No. 40 at 10).  Therefore, Kalmbach *must* allege an injury to its sales to sue under the Lanham Act. It has not done so.  Kalmbach has only made the conclusory allegations that "[c]ustomers have . . . been misled by Purina's false claims – to Kalmbach's direct detriment."  (ECF No. 1 ¶ 37) (emphasis removed).  But how this alleged customer confusion has impacted Kalmbach negatively is unclear from the Complaint.

Consider two pleading problems:  it is unclear whether Kalmbach is alleging confusion for its customers, Purina's customers, or both its and Purina's customers, just as it is unclear how this confusion is detrimental to Kalmbach.  The mere fact that Kalmbach received customer inquiries

does not bridge the necessary gap from alleging a deceptive statement that influenced purchasing decisions to the requirement that Kalmbach allege an injury.  Put differently, Kalmbach must plead that Purina's false claims actually *hurt* it, rather than simply confused customers.  *FedEx*, 97 F.4th at 453.  Kalmbach does not allege that these confused customers would otherwise have purchased Kalmbach's feed—Kalmbach just presumes injury. (*Id.* ¶¶ 37–39).  Although Kalmbach is correct that it is "not required to plead 'actual lost sales,'" it is incorrect in its assertion that "[i]t has pleaded injury sufficient to confer standing to sue for false advertising."  (ECF No. 40 at 7).  Kalmbach's Complaint is not saved by the fact that it alleges Kalmbach and Purina "directly compete[]" with their respective chicken feed products, (ECF Nos. 1 ¶ 8; 40 at 9), because even a direct competitor still must allege "[a] diversion of sales" due to false advertising.  *Lexmark*, 572 U.S. at 138.

Competitors who allege injuries of "lost sales" or a damaged "business reputation" are within the Lanham Act's zone of interests and can sue.  *Id.* at 137.  But Kalmbach's Complaint does not actually allege any specific form of injury, nor does it specify how any "material" impact of Purina's advertisements on "consumers' purchase decisions" led to any "injury to Kalmbach." (ECF No. 1 ¶ 38); *see Cadence Bank, N.A. v. Hurl*, 2022 WL 769506, at *8 (S.D. Ohio Mar. 14, 2022) (Marbley, J.) ("As pled, the Complaint contains no factual allegations that support an injury."); *compare Scotts Co. v. Procter & Gamble Co.*, 2026 WL 482655, at *7–8 (S.D. Ohio Feb. 20, 2026) (finding a complaint sufficient where it alleged "a 'significant portion of consumers who mistakenly believe [P&G's] false and/or misleading statements about its Spruce weed killer are likely to purchase Defendant's product instead of Scotts' competitive products'").  Kalmbach needed to allege an injury placing it within the zone of interests protected by the Lanham Act and

9

supplying the "causal chain" linking its injuries to Purina's alleged representations and the resultant customer confusion. *Lexmark*, 572 U.S. at 139. It has failed to do so.

Kalmbach's arguments and evidence that helped it carry the day on its motion for a preliminary injunction, *see Kalmbach*, 2025 WL 3153412, at * 8–9, *11, cannot backfill gaps in the Complaint's allegations. The Complaint conclusorily alleges harm as a general matter but fails to connect allegations of customer inquiries and purchase decisions to any actually alleged harm or injury to Kalmbach. *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 483–84 (6th Cir. 2023) ("None of these allegations describe *how* consumers withheld trade from the plaintiff.") (emphasis altered; cleaned up); *Uriah Prods., LLC v. Winston Prods., LLC*, 2025 WL 1569651, at *5 (N.D. Ohio June 3, 2025) (party asserting Lanham Act claims failed to "actually allege any reputational damage or injury"). Thus, the Complaint fails to plead any non-conclusory causal connection between Purina's statements and Kalmbach's injuries, as it must for its false advertising counts. Purina's Motion to Dismiss must be granted. That said, there is a case here.[3] Kalmbach shall have leave to amend its Complaint.[4]

### IV. CONCLUSION

Purina's Motion to Dismiss (ECF No. 29) is **GRANTED**. The Court directs amendment of the Complaint to clarify the injury or injuries alleged. Kalmbach must file any amended complaint within twenty-eight days of the date of this opinion, and attach as an exhibit a

---

[3] Briefing on the Motion to Dismiss was completed prior to a multi-day hearing and extensive briefing on Kalmbach's sought preliminary injunction.

[4] Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading . . . with . . . the court's leave."); *see* 6 Wright & Miller's Federal Practice and Procedure § 1483 (3d ed. 2025) ("Ideally, if it is at all possible that the party against whom a dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."); *Newberry v. Silverman*, 789 F.3d 636, 645–46 (6th Cir. 2015) (circuit caselaw "manifests 'liberality in allowing amendments to a complaint'").

"blackline" of the Amended Complaint against the current Complaint.  *E.g.*, *First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, 2024 WL 115933, at *14 (N.D. Cal. Jan. 10, 2024).

      **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Date: March 4, 2026**